[Crim. No. 36923, Second Dist., Div. One. Feb. 6, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD MAXWELL, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Patricia L. Reber, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and Paul C. Ament, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, J.**—A jury found defendant guilty of two counts of assault by force likely to produce great bodily injury and with a deadly weapon. He appeals from the judgment.

On Saturday defendant took a paper bag containing his belongings to the Williams home where he met Shirley Gillyard and Harvey Fuqua. On Sunday at 2:30 a.m. defendant returned for his belongings and to wait for a friend; Gillyard and Fuqua were babysitting the Williams children; Gillyard, who recognized defendant from the day before, admitted him. Defendant fell asleep and when he awakened he jumped up, went to the kitchen and urinated in a trash can; Fuqua ordered him to leave but defendant opened a kitchen drawer, got a knife and stabbed him twice on the arm then attacked Gillyard cutting her on the arm and over the eye; Fuqua opened the door to get the Williams children out of the house and defendant fled. There was an abundance of blood throughout the house in three rooms and the hallway.

Appellant contends that it was per se error to dismiss the section 1368 Penal Code proceedings without a hearing once the court expressed a doubt as to his mental capacity to stand trial. Respondent submits that this raises two issues, (1) did such a hearing take place, and (2) if not, was a hearing required.

At the outset of the trial defense counsel, Mr. Miller, expressed a doubt under section 1368, Penal Code and asked for the appointment of doctors to examine defendant; he said it was "very questionable" that defendant had been able to understand the nature of the proceedings and to assist him in the conduct of a defense in a rational manner. Defendant objected to Miller's statement and advised the court that there had been a personal disagreement between him and Miller, and "I think there is a personal situation, Judge Morrow, other than being a mental problem of mine," and that if he could communicate with Miller for a few minutes he would be ready to proceed. The court recessed and in the afternoon Miller again expressed his opinion that defendant was not mentally competent to stand trial. Turning to defendant the court said, "I have a doubt as to your mental capacity to stand trial," and expressed its intention to appoint two doctors to conduct a psychiatric examination to which defendant objected and said he would not see any psychiatrist. Defendant asked that Miller be relieved as his court-appointed counsel. A lengthy colloquy ensued between defendant and the court and defendant and Miller; the court took the motion under submission to be determined in later proceedings. Then the court fully advised defendant of his constitutional rights relative to the hearing to determine his mental competence to stand trial and thereafter appointed Dr. Coburn and Dr. Pollack to examine the defendant, and continued the case.

When the court convened a month and a half later, the judge stated, "This is the date and time set for a hearing under section 1368 of the Penal Code as to Mr. Maxwell's competency to stand trial" and recited that on August 23 he had expressed a doubt as to defendant's competency to stand trial on that day, suspended criminal proceedings and appointed two pyschiatrists to examine defendant, and that he had received from each of them a letter that states in effect that he went to the jail for the purpose of interviewing and examining defendant and defendant refused to see him. The judge then asked defense counsel if he had any reason "to dispute or doubt the accuracy of the positions of the physicians' statement?" and Miller replied "No, Your Honor," whereupon the judge stated: "All right. Then, that being the case, I don't have any reason at this time to doubt Mr. Maxwell's competency to stand trial. The code provides that a defendant is presumed to be competent to stand trial, and I have no evidence to the contrary. I have observed his conduct in court, and while it seems to border on the bizarre, that may very well be calculated activity on the part of the defendant. So, I am going to adjourn the 1368 proceedings at this time and reinstate criminal proceedings."

The pertinent statutory law is clear. If a doubt arises in the mind of the judge as to the mental competence of a defendant to stand trial, he shall state that doubt in the record (§ 1368, subd. (a), Pen. Code) and "shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to section 1368.1 and 1369." (§ 1368, subd. (b).) According to section 1369, Penal Code, the hearing on the question of mental competence shall proceed in this order: the court shall appoint a psychiatrist or two psychiatrists where defendant informs the court he is not seeking a finding of mental competence, to examine defendant (§ 1369, subd. (a)); defense counsel "shall offer evidence in support of the allegation of mental incompetence" (§ 1369, subd. (b)(1)) and if the defense declines to offer any evidence in support of the allegation the prosecution "may do so" (§ 1369, subd. (b)(2)); and "It shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that he is mentally incompetent." (§ 1369, subd. (f).) Section 1370, subdivision (a), Penal Code provides: "If the defendant is found mentally competent, the criminal process shall resume, . . . ."

We conclude that, viewed in the light of the foregoing record, the hearing to determine defendant's mental capacity to stand trial contem-

plated in sections 1368 and 1369, Penal Code was had, and in compliance with the statutory requirements.

When defense counsel expressed his doubt as to defendant's mental competence to stand trial, the court recessed to permit consultation between defendant and his counsel. When the court convened, counsel again expressed his doubt. Although defendant objected claiming there to be only a personal disagreement between him and his counsel, not "a mental problem," the judge stated his doubt on the record and, as was his duty under section 1368, subdivision (b) (*People* v. *Stewart* (1979) 89 Cal.App.3d 992, 996 [153 Cal.Rptr. 242]), suspended criminal proceedings for the purpose of a hearing under section 1369. The judge advised defendant of his constitutional rights regarding the hearing under section 1369 at length and explained that "at this trial a determination will be made as to your ability to stand trial. If you are found mentally able to do so, the criminal trial will continue. [¶] If you are found mentally incompetent to stand trial, you will be ordered committed to the California Department of Health for placement in a state hospital or other suitable facility until such time as you are mentally able to proceed to trial." At this point, according to section 1369, Penal Code, the trial or hearing on the question of mental competence began with the court's appointment "pursuant to 1369(a) of the Penal Code and 730 of the Evidence Code" of two psychiatrists to examine defendant. The court recessed to permit the doctors to make the examinations.

A month and a half later court was convened with the announcement by the judge that it was the time and date set for hearing as to defendant's competence to stand trial. He announced he had received a letter from each psychiatrist stating that he had presented himself at the jail but defendant had refused to see him; asked if he had any dispute or doubt concerning the doctors' statement to this effect, defense counsel answered in the negative. If defense counsel wished to offer any evidence in support of his allegation of mental incompetence, this was the time to do so, but both defendant (who had been advised that if he had any evidence to offer at the hearing he could do so) and his counsel remained silent, as did the prosecutor. The burden was on defense counsel to offer any evidence he might have in support of the allegation of mental incompetence. (§ 1369, subd. (b)(1).) Defense counsel not having assumed the burden and the People having elected to offer no evidence, the court was left with two letters from the doctors reciting

defendant's refusal to see them, its own observations of defendant since its expression of doubt a month and a half before and the presumption of mental competence which defense counsel had not seen fit to challenge. (*People v. Campbell* (1976) 63 Cal.App.3d 599, 608 [133 Cal.Rptr. 815].) ▓ On this state of the record the judge declared that he no longer had a doubt in his mind concerning defendant's competence to stand trial. The fact that neither party chose to present evidence on the issue does not point to the absence of a hearing. This very situation is clearly contemplated in section 1369, subdivision (b)(2), Penal Code.

Appellant equates the court's declaration that it no longer had a doubt as to his mental competence with a dismissal of the section 1368 proceedings without a hearing. But at that time the judge had gone far beyond section 1368, Penal Code and had conducted as much of a hearing under section 1369 as the parties had permitted under the circumstances, and then resolved the issue of the defendant's mental competence. The judge did not recite the existence of the two letters, his observations and the presumption and that there was no evidence to the contrary for the purpose of finding there was no substantial evidence to require a hearing as in *People v. Schneider* (1979) 95 Cal.App.3d 671, 678 [157 Cal.Rptr. 314] and *People v. Stewart* (1979) 89 Cal.App.3d 992, 996-997 [153 Cal.Rptr. 242], but for the purpose of resolving the issue before him on the merits. He invoked the presumption of section 1369, subdivision (f) which the statute contemplates shall be considered with other evidence on the hearing; and the proof of mental incompetence by the "preponderance of the evidence" mentioned therein clearly has no place in the judge's consideration except in a determination of the issue on its merits. He was at the conclusion of a section 1369 hearing when he declared he no longer entertained a doubt. It is true that section 1370, subdivision (a), Penal Code provides that the criminal prosecution shall resume if defendant is found mentally competent, but the statute does not require any specific form of finding. Although the judge did not utter the magic words "defendant is found mentally competent," that is exactly what he intended to and did find in his declaration that he no longer had a doubt. Obviously at that time he believed defendant to be mentally competent to stand trial. (See *People v. Hofferber* (1977) 70 Cal.App. 3d 262, 270 [137 Cal.Rptr. 115] [no finding of incompetence to stand trial].) Implied in the judge's declaration is the finding that defendant was *mentally competent*. Based thereon the criminal proceedings were resumed. This was a proper resolution on the merits of the mental

competency issue and the judge accordingly adjourned the proceedings and reinstated the criminal proceedings.

The only other issue relates to the failure of the trial court to state its reasons for the imposition of consecutive sentences. (*People* v. *Walker* (1978) 83 Cal.App.3d 619, 622 [148 Cal.Rptr. 66].) Although it is likely that the trial judge relied on certain factors in imposing consecutive sentences, the record is not sufficient to establish what they were. We agree with appellant that the case must be remanded for resentencing to permit the court to articulate its reasons for imposing consecutive sentences.

The cause is remanded to the superior court for resentencing defendant in accord with the views expressed in this opinion; in all other respects the judgment is affirmed.

Spencer, P. J., and Hanson (Thaxton), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 1, 1981.