BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE BRUCE S. ALPERT, COUNTY COUNSEL, COUNTY OF BUTTE, has requested an opinion of the Attorney General on the following question:
Is the state or a county responsible for the payment of the costs of (1) a report required before a court may consider suspension of a defendant's sentence, where the defendant has been convicted of a lewd or lascivious act on a minor under 14, (2) an examination of a defendant's mental competency, (3) an examination of a defendant, who has been convicted of a felony, to determine whether an involuntary civil commitment should be made due to narcotics addiction, (4) an examination of a person, in the absence of a criminal proceeding, to determine whether a civil commitment should be made due to narcotics addiction, (5) an examination and testimony in connection with an involuntary civil commitment of a person believed to be imminently dangerous to others, (6) evaluations and counsel regarding a civil commitment due to an inmate being a sexually violent predator, and (7) an examination of a defendant where a plea of "not guilty by reason of insanity" has been entered?
 CONCLUSION
The state is responsible for the payment of the costs of (1) a report required before a court may consider suspension of a defendant's sentence, where the defendant has been convicted of a lewd or lascivious act on a minor under 14, (2) an examination of a defendant's mental competency, (3) an examination of a defendant, who has been convicted of a felony, to determine whether an involuntary civil commitment should be made due to narcotics addiction, (4) an examination of a person, in the absence of a criminal proceeding, to determine whether a civil commitment should be made due to narcotics addiction, (5) an examination and testimony in connection with an involuntary civil commitment of a person believed to be imminently dangerous to others. A county is responsible for the payment of the costs of (6) evaluations and counsel regarding a civil commitment due to an inmate being a sexually violent predator, and (7) an examination of a defendant where a plea of "not guilty by reason of insanity" has been entered.
 ANALYSIS
The question presented for resolution concerns whether the state or a county is responsible for the payment of certain costs incurred with respect to expert evidence[1] services and legal representation furnished in the course of various court proceedings. We conclude that except in two instances, the state is required to pay for the professional services in question.
In amending the Brown-Presley Trial Court Funding Act (Gov. Code, §§ 77000-77400; "Act"),[2] the Lockyer-Isenberg Trial Court Funding Act of 1997 (Stats. 1997, ch. 850) abolished the dual system under which trial courts were subject to budget processes at both the state and local level. The 1997 legislation declared that "the funding of trial court operations is most logically a function of the state." (Stats. 1997, ch. 850, § 2.)
"On or after July 1, 1997, the state shall assume sole responsibility for the funding of court operations, as defined in Section 77003 and Rule 810 of the California Rules of Court. . . ." (§ 77200; see also §§ 77201, subd. (a), 77201.1, subd. (a).) Each county retains " the responsibility for justice-related expenses not included in Section 77003 which are otherwise required of the county by law, including, but not limited to, indigent defense representation and investigation, and payment of youth authority charges." (§§ 77201, subd. (g), 77201.1, subd. (d).)
The key statute that defines "court operations" which are funded by the state is subdivision (a) of section 77003:
"As used in this chapter, `court operations' means all of the following:
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(5) Services and supplies relating to court operations.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(7) . . . actual indirect costs for county . . . services attributable to court operations, but specifically excluding, but not limited to . . . indigent criminal defense . . . .
 "(8) . . . other matters listed as court operations in Rule 810 of the California Rules of Court . . . .
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
Rule 810 of the California Rules of Court ("Rule 810") further specifies "court operations" to be funded by the state:
 "(a) Except as provided in subdivision (b) and subject to the requirements of subdivisions (c) and (d), `court operations' as defined in Government Code section 77003 includes the following costs:
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .;
 "(5) (services and supplies) operating expenses in support of judicial officers and court operations;
" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ;
 "(b) Excluded from the definition of `court operations' are the following:
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(3) district attorney services;
"(4) probation services;
"(5) indigent criminal and juvenile delinquency defense;
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ;
 "(d) Trial court budgets and financial reports shall identify all allowable court operations in the following eleven (11) functional budget categories. . . .
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"Function 10. All Other Court Operations
"Costs reported in this function are:
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(Services and supplies) Cost items may include, for example:
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"Court-appointed expert witness fees (for the court's needs)
 "Court-ordered forensic evaluations and other professional services (for the court's own use)
" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."[3]
Significantly, then, the state is obligated to pay the costs of "[c]ourt-appointed expert witness fees (for the court's needs)" and "court-ordered forensic evaluations and other professional services (for the court's own use)." (Rule 810, subd. (d), Function 10.)
1. Lewd or Lascivious Acts — Suspension of Sentence
Penal Code section 288.1 provides that a defendant convicted of committing a lewd or lascivious act on a child under the age of 14 (Pen. Code, § 288) may not have his or her sentence suspended unless the court first obtains a report from a psychiatrist, psychologist, or a recognized treatment program concerning the defendant's mental condition. "The obvious intent of the Legislature in enacting this statute was to protect society by requiring a psychiatric or psychological report insuring that defendant is a suitable candidate for probation." (People v. Thompson (1989) 214 Cal.App.3d 1547, 1549.)
The report of the defendant's mental condition is ordered by the court to serve its purposes in determining whether or not the defendant's sentence should be suspended. The report assists the court in performing its judicial role. It is not ordered by the prosecution or the defense to assist them in performing their duties.
Accordingly, the report represents "[c]ourt-ordered forensic evaluations and other professional services (for the court's own use)" (Rule 810, subd. (d), Function 10) to be paid by the state as part of "court operations" (§ 77200).
2. Mental Competency
Pursuant to Penal Code section 1367, subdivision (a), a person cannot be tried "if, as result of mental disorder . . ., the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." A hearing is required to determine whether a person is mentally competent to stand trial if during the pendency of the action, a doubt arises in the mind of the judge as to the mental competence of the defendant and if counsel informs the court that he or she believes the defendant is or may be mentally incompetent. (Pen. Code, § 1368.) If a hearing is held, the court must appoint a psychiatrist or licensed psychologist to examine the defendant. (Pen. Code, § 1369, subd. (a).) If the defendant or defense counsel informs the court that the defendant is not seeking a finding of mental incompetence, the court must appoint two psychiatrists or psychologists, with the defense and the prosecution each naming one. (Ibid.) When an order for a hearing into the present mental competence of the defendant has been issued, all proceedings in the criminal prosecution are suspended until the question of present mental competence has been determined. (Pen. Code, § 1368, subd. (c).) At the hearing, defense counsel "shall offer evidence in support of the allegation of mental incompetence" (Pen. Code, § 1369, subd. (b)(1)), and if the defense declines to offer any evidence in support of the allegation, the prosecution "may do so" (Pen. Code, § 1369, subd. (b)(2). At the end of the hearing at which the expert evidence is received, the question of the present mental competence of the defendant is determined by the jury. If the defendant is found mentally competent, the criminal process resumes. (Pen. Code, § 1370; see generally People v. Fields (1965) 62 Cal.2d 538, 540 ["In a proceeding under section 1368 a defendant is not charged with a criminal act and is not subject to criminal proceedings . . . if he is found insane"]; Baqleh v. Superior Court (2002) 100 Cal.App.4th 478,490-491; People v. Superior Court (McPeters) (1985)169 Cal.App.3d 796, 798; People v. Bye (1981) 116 Cal.App.3d 569,575-577.)
Significantly, a Penal Code section 1368 hearing is required upon a finding by the judge that he or she, and not simply one of the parties, has a doubt as to the mental competency of the defendant. (See People v. Koontz (2002) 27 Cal.4th 1041, 1064.) If such doubt exists for the judge, it is his or her duty to suspend the criminal proceedings for the purpose of conducting a competency hearing. (People v. Maxwell (1981) 115 Cal.App.3d 807,811); People v. Stewart (1979) 89 Cal.App.3d 992, 996.) The court initiates the inquiry and must maintain it even if defense counsel does not concur. The expert evidence comes from psychiatrists or psychologists appointed by the court in a specific circumstance set forth by statute. The professional services are rendered to assist the court in determining whether criminal proceedings against the defendant may proceed.
Under these circumstances, such expert evidence is "for the court's own use" (Rule 810, subd. (d), Function 10) as part of "court operations" (§ 77200) payable by the state.
3. Addiction to Narcotics — Conviction of a Crime
Welfare and Institutions Code section 3051 generally provides that when a defendant is convicted of a felony, the judge must suspend sentencing and order the district attorney to file a petition for commitment of the defendant to the Director of Corrections for confinement in a rehabilitation facility if it appears to the judge that the defendant may be addicted to narcotics. Upon the filing of the petition, the court must order the defendant to be examined by a physician or psychologist who is directed to report whether the person is addicted or in imminent danger of addiction. If requested by the defendant, an examination is conducted by a second physician. The written report by the physician or physicians is delivered to the court and determines whether or not a commitment hearing must be held. During this process the criminal proceedings are deemed suspended. (People v. Leonard (1972) 25 Cal.App.3d 1131, 1136.)
As with the costs of expert evidence services in a Penal Code section 1368 mental competency hearing, we find that the expert evidence services furnished in a commitment proceeding for narcotics addiction under Welfare and Institutions Code section3051 are provided "for the courts own use" (Rule 810, subd. (d), Function 10) as part of "court operations" (§ 77200) for which the state is responsible.
4. Addiction to Narcotics — No Criminal Proceeding
We find the same to be true for the professional services involved in a commitment proceeding pursuant to Welfare and Institutions Code section 3100. There it is provided that anyone who believes a person to be addicted to narcotics or in imminent danger of becoming addicted may report this belief to the district attorney. However, unlike the situation with respect to Welfare and Institutions Code section 3051, there is no attendant criminal proceeding. If probable cause exists, the district attorney may petition the superior court for a commitment of the person to the Department of Corrections for confinement in a rehabilitation facility. On the filing of the petition, the judge must order an examination by two physicians. (Welf. Inst. Code, §§ 3102, 3103.5.) The court is required to dismiss the petition if the physicians' report concludes that the person is not addicted or in imminent danger of addiction. If the report concludes that addiction or the danger of addiction is present, commitment proceedings must be commenced. (Welf. Inst. Code, § 3104.)
The Welfare and Institutions Code section 3100 examination is required to be ordered by the court as a matter of law under specified circumstances. The report of the physicians is furnished "for the court's own use" to assist it in exercising its judicial function. The professional services are not rendered on behalf of the petitioner or the person named in the petition. We conclude that the costs of the examination and the report are properly payable from state funds under section 77200 and Rule 810, subdivision (d), Function 10.
5. Persons Dangerous to Others
A person who is a danger to himself or others as the result of a mental disorder may be taken into custody and placed in a facility designated by a county for 72-hour treatment and evaluation. (Welf. Inst. Code. § 5150.) At the end of the 72-hour period, the person may be certified for an additional 14-day period of intensive treatment (Welf. Inst. Code, §5250), followed by further treatment over a period of not more than 180 days if certain findings are made concerning the danger posed by the person (Welf. Inst. Code, § 5300). Upon petition by an authorized party, a hearing or jury trial must be conducted in superior court to determine whether the facts warrant the additional period of treatment. (Welf. Inst. Code, § 5301.)
With respect to the use of expert evidence in the hearing or trial, Welfare and Institutions Code section 5303.1 provides:
 "For the purposes of any hearing or jury trial held pursuant to this article, the judge of the court in which such hearing or trial is held may appoint a psychiatrist or psychologist with forensic skills. Such psychiatrist or psychologist shall personally examine the person named in the petition. Such a forensic psychiatrist or psychologist shall testify at the hearing or jury trial concerning the mental condition of the person named in the petition and the threat of substantial physical harm to other beings such person presents. . . ."
The commitment hearing or jury trial is a special proceeding of a civil nature. (See Welf. Inst. Code, § 5300.5
[conviction of a crime is not necessary for commitment under the Lanterman-Petris-Short Act]; Ford v. Norton (2001)89 Cal.App.4th 974.) The appointment of the forensic psychiatrist or psychologist is optional with the court. The expert's testimony is a mandated part of the hearing or trial if the judge finds that it would be beneficial, and it is not intended to assist the prosecution or the defense in the performance of their duties.
We find that the expert services are rendered "for the court's own use." (Rule 810, subd. (d), Function 10.) Accordingly, their costs are properly chargeable to the state as part of "court operations." (§ 77200.)
6. Sexually Violent Predator
The Sexually Violent Predator Act (Welf. Inst. Code, §§ 6600-6609.3) provides for the judicial commitment of sexually violent predators. Welfare and Institutions Code section 6600, subdivision (a)(1), defines a "sexually violent predator" as follows:
 "`Sexually violent predator' means a person who has been convicted of a sexually violent offense against two or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."
Such individuals are identified while they are incarcerated so that they may be confined and treated until they no longer present a threat to society. (Stats. 1995, ch. 763, § 1.) Inmates are screened by the Department of Corrections 6 months prior to their scheduled release. (Welf. Inst. Code, §6601.) If officials find that an inmate is likely to be a sexually violent predator, the inmate is referred to the Department of Mental Health for evaluation. If the Department of Mental Health determines that the person is a sexually violent predator, the director of the Department of Corrections must forward a request for a petition for commitment to the county where the trial was held. If the county's designated counsel (either the district attorney or county counsel) concurs with the recommendation, a petition for commitment must be filed in superior court.
The superior court must determine whether there is "probable cause" to believe that the person named in the petition is likely to engage in sexually violent predatory criminal behavior upon release. (Welf. Inst. Code, § 6602.) If probable cause is found, the court is required to order a trial to determine whether the person is a sexually violent predator. A person determined to be a sexually violent predator is committed to the custody of the Department of Mental Health for a minimum two-year period for appropriate treatment and confinement. (Welf. Ins. Code, § 6604.)
The judicial proceeding for determining whether a person is a sexually violent predator is a special proceeding of a civil nature. (Hubbart v. Superior Court (1999) 19 Cal.4th 1138, 1143; Leake v. Superior Court (2001) 87 Cal.App.4th 675, 679.) The person is "entitled to assistance of counsel at the probable cause hearing" (Welf. Inst. Code, § 6602, subd. (a)) and is "entitled . . . to the assistance of counsel, to the right to retain experts or professional persons to perform an examination on his or her behalf" at the subsequent trial if probable cause is found (Welf. Inst. Code, § 6603, subd. (a)). If the person is indigent, "the court shall appoint counsel . . . and assist the person in obtaining an expert or professional person to perform an examination or participate in the trial on the person's behalf." (Ibid.) If the person is thereafter committed, he or she "shall have a current examination of his or her mental condition made at least once every year," and the court may appoint a qualified expert or professional person to examine him or her if the person is indigent. (Welf. Inst. Code, § 6605, subd. (a).) At any additional hearings needed to determine whether the person should be released, he or she is entitled to the appointment of counsel and experts by the court if the person is indigent. (Welf. Inst. Code, § 6605, subd, (d).)
Unlike the professional services rendered in the proceedings discussed in the first five situations, here the appointed counsel and retained experts would not be providing their services "for the court's own use" pursuant to Rule 810, subdivision (d), Function 10. Rather, these professional services would be rendered to assist the person named in the petition when the person is indigent. (Welf. Inst. Code, §§ 6602, 6603, 6605.) Those preparing the evaluations and representation would be acting on behalf of the individual, not on behalf of the court. Hence, the costs of such services would not be part of "court operations" as defined in section 77003, but instead would constitute "justice-related expenses" (§ 77002) that remain the responsibility of a county.
7. Insanity Defense
One of the pleas that a defendant in a criminal proceeding may enter is "not guilty by reason of insanity." (Pen. Code, §1016(6).) When the plea is entered, the court must select and appoint two psychiatrists or licensed psychologists, and may appoint three, for the purpose of examining the defendant and investigating his or her mental status. If summoned, these experts must testify at the proceeding in which the sanity of the defendant is in question. (Pen. Code, §1027, subd. (a).)
With regard to the fees for the expert services provided by the psychiatrists or psychologists in the case of an insanity defense, Penal Code section 1027, subdivision (a) states:
 " . . . The psychiatrists or psychologists so appointed by the court shall be allowed, in addition to their actual traveling expenses, such fees as in the discretion of the court seems just and reasonable, having regard to the services rendered by the witnesses. The fees allowed shall be paid by the county where the indictment was found or in which the defendant was held for trial."
Accordingly, the Legislature has expressly made the county responsible for paying the costs of the expert services required when a plea of not guilty by reason of insanity is entered. The costs are part of the county's "responsibility for justice-related expenses not included in Section 77003. . . ." (§ 77201, subd. (g).)
In summary, we conclude that the state is responsible for the costs of expert evidence services provided under Penal Code sections 1369 and 288.1 and Welfare and Institutions Code sections 3051, 3103.5 and 5303.1. The county is responsible for the payment of the costs of expert evidence services and counsel provided under Penal Code section 1027 and Welfare and Institutions Code sections 6602-6605.
[1] For purposes of this opinion, we use the term "expert evidence" as meaning "[e]vidence about a scientific, technical, or professional issue given by a person qualified to testify because of familiarity with the subject or special training in the field" (Black's Law Dict. (7th ed. 1999) pp. 577-578), referring to both written reports or evaluations prepared by the expert as well as testimony given by the expert.
[2] Unless otherwise indicated, all statutory section references are to the Government Code.
[3] "Forensic" refers to an evaluation or report that is "used in legal proceedings." (Webster's 3d New Internat. Dict. (2002) p. 889; see also, Black's Law Dict., supra, at p. 660.)