[No. E027229. Fourth Dist., Div. Two. Jan. 30, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD ROSARIO MONTOYA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.B. and II.C.

826

**COUNSEL**

Maureen J. Shanahan, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Jeffrey J. Koch and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

RICHLI, J.—Defendant appeals the trial court's finding that he is a mentally disordered offender (MDO).

I

### FACTS AND PROCEDURAL HISTORY

On January 3, 1992, defendant pled guilty to one count of second degree robbery (Pen. Code, § 211[1]), admitted the personal use of a firearm within the meaning of section 12022.5, and was sentenced to an aggregate term of seven years in state prison. On February 26, 1999, the district attorney filed a petition for extended involuntary treatment pursuant to section 2970. The petition alleged (1) that defendant had been committed to the Department of Mental Health as an MDO as a condition of parole, (2) that he was not in remission and could not be kept in remission without continued treatment, and (3) that by reason of his severe mental disorder he represented a substantial danger of physical harm to others. On April 20, 1999, after defense counsel and the court agreed that defendant had waived jury trial, the court found he was not in remission and ordered his commitment at Patton State Hospital until May 27, 2000.

On November 15, 1999, the district attorney filed a second section 2970 petition, this time based on a September 16 recommendation submitted by the medical director at Patton State Hospital and one of defendant's treating psychiatrists, Dr. Sarla Gnanamuthu and Dr. George Proctor, respectively. Hospital reports attached to the petition indicated that defendant had refused to cooperate in his treatment program, had been physically violent, and had made frequent violent and obscene threats against staff members and other patients. Specifically, defendant had threatened to stab and shoot staff members and invited them to "look at my rap sheet" if they did not believe him. On July 2, 1999, defendant hit a male staff member over the head with a chair, injuring the victim severely.

On December 10, 1999, the petition hearing was set for jury trial on January 31, 2000. On April 18, 2000, after a number of continuances and

---

[1]All further statutory references are to the Penal Code unless otherwise specified.

pretrial proceedings, the matter was set for bench trial. Defendant was not present at the proceeding when this was done. On April 25, at the beginning of the section 2970 hearing, defense counsel said, "I have waived jury." The court did not take an express jury waiver from defendant.

Psychiatrists George Proctor and Robert Moreno and psychologist Robert Suiter all testified that defendant fit the criteria of an MDO who was dangerous to others. Although defendant suffered from more than one mental disease, and although the doctors were uncertain as to the etiology of his various disorders and their relationship to his violent actions, they agreed that his primary diagnosis was schizophrenia. Dr. Proctor had reviewed defendant's medical records from 1977, when he was first admitted to a psychiatric treatment facility, and had treated defendant for the month he was on "Unit 30" after he attacked the staff member. Dr. Proctor opined that defendant's violent actions were the result of his schizophrenia. Dr. Suiter said he had interviewed defendant most recently on January 5, 2000, and had reviewed defendant's most recent records, including the notes of other physicians. Dr. Suiter said defendant had schizophrenia and schizo-affective disorder. Dr. Moreno was in charge of the unit to which defendant was admitted on February 25, 2000. He had examined defendant himself and had reviewed the reports of other doctors. Dr. Moreno also was aware of an incident on March 14, 2000, in which defendant assaulted another inmate.

Defense counsel conceded that defendant had a severe mental disorder that was not in remission but argued that the district attorney had failed to prove beyond a reasonable doubt that defendant was a danger to others. The court found defendant met all the criteria of section 2970 and committed him to the continued care of the Department of Mental Health until May 27, 2001.

## II

### DISCUSSION

Defendant makes three allegations on appeal: that his constitutional rights were infringed because he did not personally waive his right to a jury trial, that there was insufficient evidence that he is an MDO, and that he received ineffective assistance of counsel.

### A. *Jury Waiver*

■ Defendant argues at length, citing to numerous federal cases dealing with the Sixth Amendment jury trial rights of criminal defendants, that

because he did not *personally* waive his right to a jury trial, his federal and state constitutional rights were infringed. The People reply that defendant's arguments and citations are inapplicable to the situation here, where the attorney for an MDO waived defendant's civil right to a jury trial on his behalf. We agree with the People that defendant's reliance on criminal cases is misplaced and that the relevant case law does not support him.

Defendant is correct, of course, that in a criminal proceeding the right to a jury trial on the underlying charges is a federal and state constitutional right that must be waived by the defendant personally. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 16; *People v. Ernst* (1994) 8 Cal.4th 441, 446 [34 Cal.Rptr.2d 238, 881 P.2d 298].) In situations ancillary to criminal proceedings, where a jury trial right is merely statutory, the federal Constitution is generally not implicated, and the right may be waived by counsel. (See, e.g., *People v. Saunders* (1993) 5 Cal.4th 580, 589, fn. 5 [20 Cal.Rptr.2d 638, 853 P.2d 1093] [express waiver of statutory right to have same jury determine current charges and prior allegations not required]; *People v. Masterson* (1994) 8 Cal.4th 965, 972 [35 Cal.Rptr.2d 679, 884 P.2d 136] [counsel may waive a client's right to a jury trial in a competency proceeding, even over the client's objection]; *People v. Wims* (1995) 10 Cal.4th 293, 309 [41 Cal.Rptr.2d 241, 895 P.2d 77] [statutory right to jury determination of § 12022, subd. (b) allegation for purposes of sentence enhancement does not require express personal waiver of defendant]; *People v. Vera* (1997) 15 Cal.4th 269, 273, 279 [62 Cal.Rptr.2d 754, 934 P.2d 1279] [statutory jury trial right as to truth of prior alleged convictions is not of constitutional dimension and may be waived by counsel].)

Defendant is again correct that the California Constitution confers a right to trial by jury in civil cases (Cal. Const., art. I, § 16), but the Constitution also provides that "a jury may be waived by the consent of the parties expressed as prescribed by statute." Generally, this means an attorney *or* the client may waive jury trial in a civil case. (*Zurich General Acc. & Liability Ins. Co. v. Kinsler* (1938) 12 Cal.2d 98, 105 [81 P.2d 913], overruled on other grounds in *Fracasse v. Brent* (1972) 6 Cal.3d 784, 792 [100 Cal.Rptr. 385, 494 P.2d 9]; *People v. Masterson, supra,* 8 Cal.4th at p. 974; *People v. Harris* (1993) 14 Cal.App.4th 984, 992 [18 Cal.Rptr.2d 92].) Finally, in proceedings that are neither civil nor criminal, but "special proceedings," such as a competency hearing, the right to a jury trial may be waived by counsel, even over defendant's express objection. (*Masterson, supra,* at p. 969.)

Although a section 2970 hearing, like a competency hearing, is something of a hybrid, a civil hearing with criminal procedural protections,[2] it is nonetheless, as the statute clearly states and California courts have consistently agreed, a civil hearing. (§ 2972 subd. (a); *People v. Superior Court (Myers)* (1996) 50 Cal.App.4th 826, 832 [58 Cal.Rptr.2d 32]; *People v. Robinson* (1998) 63 Cal.App.4th 348, 352 [74 Cal.Rptr.2d 52]; *People v. Fernandez* (1999) 70 Cal.App.4th 117, 126 [82 Cal.Rptr.2d 469].[3]) As a civil hearing, jury trial may thus be waived "as prescribed by statute." (Cal. Const., art. I, § 16.) The question then is whether the words "[t]he trial shall be by jury unless waived by both the person and the district attorney" in section 2972 mean defense counsel may waive jury trial on behalf of his client, as happened in the instant case. We think they do.

On this point, the People aptly cite the recent case of *People v. Otis* (1999) 70 Cal.App.4th 1174 [83 Cal.Rptr.2d 326]. The *Otis* court held that, in a competency hearing under section 2966, subdivision (b), identical words in that provision (which deals with procedures for a hearing on competency to stand trial) mean that defense counsel may waive his client's right to trial by jury, even over the client's objection. "[N]othing in the requirement that the waiver must be made by 'the person' precludes the person's attorney from acting on his behalf. The Legislature did not say the waiver had to be made 'personally.'" (*Otis, supra*, at p. 1176.)

Defendant tries, unsuccessfully, to distinguish *Otis,* which he says did not address his specific claim that, since the word "person" as used in other parts of section 2972 refers to the defendant personally, it must do the same in this sentence of subdivision (a). But the *Otis* defendant made a very similar argument regarding the use of the word "person" in other parts of section 2966, and the court did address the question in that context. The court noted that the rules of statutory construction cannot be applied to reach a conclusion "that is at odds with the intention of the Legislature." (*People v. Otis, supra,* 70 Cal.App.4th at p. 1177.) Thus, in light of the legislative purpose of a statute dealing with mentally disordered individuals, the court concluded: "The Legislature must have contemplated that many persons, such as Otis,

---

[2]Both civil and criminal rules of discovery apply; representation for the People, who carry the burden of proof, is by the district attorney; the defendant has rights to an attorney and the unanimous verdict of a jury; and the standard of proof is "beyond a reasonable doubt." (§ 2972, subds. (a), (b).)

[3]The courts in these cases have reasoned that the purposes of the law, to provide treatment for mentally disordered persons and to protect the public, demonstrate its nonpenal nature: "[T]he MDO provisions are neither punitive in purpose nor effect and their procedural safeguards do not require us to transform the hearing into a criminal trial. [Citation.]" (*People v. Superior Court (Myers), supra,* 50 Cal.App.4th at pp. 834, 838-839; see also *People v. Robinson, supra,* 63 Cal.App.4th at pp. 350, 352; *People v. Fernandez, supra,* 70 Cal.App.4th at p. 129.)

might not be sufficiently competent to determine their own best interests. There is no reason to believe the Legislature intended to leave the decision on whether trial should be before the court or a jury in the hands of such a person. That the Legislature specified a waiver of time could be by the petitioner 'or his or her counsel' does not lead us to conclude in the context of this statute that the petitioner must personally waive a jury." (*Ibid.*)

Similarly here, defendant did not contest that he was an MDO not in remission. The fact that the Legislature gave him other personal rights within the statute does not lead us to conclude that he had to personally waive his right to a jury trial in a civil proceeding. Moreover, the fact that the California Constitution, also in article I, section 16, says that a jury trial in a criminal proceeding must be waived by "defendant and defendant's counsel" shows that the Legislature knows how to make clear when a personal jury waiver is required. No such language is present in the disputed sentence of section 2972. (See also *People v. Masterson, supra,* 8 Cal.4th at p. 971.)

Although it is certainly conceivable, as defendant suggests, that a patient might be mentally disordered for some purposes and not for others, it is particularly difficult to sort those categories out in a case of schizophrenia, as all of the doctors testified. For whatever reasons (drug damage, inherited characteristics, other mental illnesses), defendant's mind, as even his attorney admitted, did not function normally. Defendant's poor judgment had been demonstrated by his aberrant behavior innumerable times over the years, most recently by his ill-considered decision to hit a staff member over the head with a chair and to threaten to kill staff members and fellow inmates. Thus there was no reason to believe that defendant was capable of making a reasoned decision about the relative benefits of a civil jury trial compared to a civil bench trial.[4]

Nor does a jury trial right of this genre implicate the federal due process clause, as defendant claims. Defendant relies on *Hicks v. Oklahoma* (1980) 447 U.S. 343 [100 S.Ct. 2227, 65 L.Ed.2d 175], but *Hicks* does not support him. In the very passage of *Hicks* cited by defendant, the Supreme Court stated: "Where . . . a State has provided for *the imposition of criminal punishment* in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the

---

[4]We also note that the record is devoid of evidence that his attorney did *not* discuss the question with defendant sometime between December 10, 1999, when the jury trial was set, and April 18, 2000, when a court trial was set, even if defendant was not present then. Nor did defendant protest his attorney's waiver at the hearing.

extent determined by the jury in the exercise of its statutory discretion, [citation], and *that* liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State." (*Id.,* at p. 346 [100 S.Ct. at p. 2229], italics added.) A jury sitting in a civil hearing pursuant to sections 2970 and 2972 does not impose criminal punishment and has no power to determine the extent to which the defendant will be deprived of his liberty. Defendant's jury trial interest thus is, in this case, "merely a matter of state procedural law" and does not implicate the Fourteenth Amendment. (See also *People v. Wims, supra,* 10 Cal.4th at p. 310, distinguishing *Hicks* in the context of § 12022.)

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

### DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and McKinster, J., concurred.

---

*See footnote, *ante,* page 825.